**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **THE BANK OF NOVA SCOTIA,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>) **Civil Action No. 2010-118**<br>**DIANE D. ROSS a/k/a DIANE J. ROSS** )<br>**a/k/a DIANE ROSS and HAROLD HODGE,** )<br>)<br>**Defendants.** )<br>_____) | |

**Attorneys:**
**Matthew J. Duensing, Esq.,**
**Johanna Harrington, Esq.,**
St. Thomas, USVI
   *For the Plaintiff*

**Diane Ross,** *Pro Se,*
St. Croix, USVI
   *For Defendant Diane Ross*

**Martial Webster, Esq.,**
St. Croix, USVI
   *For Defendant Harold Hodge*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER is before the Court on Plaintiff Bank of Nova Scotia's ("Scotiabank" or the "Bank") Motion for Ruling on Damages. (Dkt. No. 46). By this Motion, Scotiabank seeks a ruling on that part of its Motion for Summary Judgment seeking damages against Defendant Diane Ross ("Defendant Ross" or "Ross") that the Court previously denied without prejudice because Scotiabank "failed to adequately prove the amount of its damages due under its breach of contract and foreclosure causes of action." (Dkt. No. 42 at 16). With her Response to Scotiabank's Motion, Defendant Ross also included a Request for Reconsideration of the Court's October 12, 2012 Order granting in part Scotiabank's Motion for Summary Judgment. (Dkt. No.

50). For the reasons discussed below, the Court will grant Scotiabank's Motion for Ruling on Damages, and will grant in part and deny in part Scotiabank's Motion for Summary Judgment on its damages claim. The Court will also deny Ross's Motion for Reconsideration.

## I. PROCEDURAL HISTORY

On December 10, 2010, Scotiabank filed a Complaint against Defendant Diane Ross alleging breach of contract and foreclosure causes of action. (Compl., Dkt. No. 1).[1] The Complaint alleged that, on or about October 27, 2000, Defendant Ross executed a Promissory Note in the amount of $126,400, at an interest rate of 9.25% *per annum*, with the indebtedness secured by a Mortgage executed the same day, regarding property (the "Property") described as:

> Plot No. 110 (comprising 0.65 U.S. acre, more or less), Estate Work and Rest
> Queen Quarter, as particularly shown on Public Works Drawing No. 988,
> Dated December 6, 1960.

(Dkt. No. 1, ¶¶ 4-5, 7). The Complaint further alleged that Defendant Ross defaulted on the Promissory Note and Mortgage, and the Bank sought a judgment of debt and foreclosure, interest, costs and attorney's fees. *Id.*, ¶ 8.

Defendant Ross, appearing *pro se*, filed an "Answer, Counterclaim, Crossclaim and Class Action" in February 2011 (Dkt. No. 7), and an "Amendment to Answer, Counterclaim, Crossclaim and Class Action" in March 2011. (Dkt. No. 13). In August 2011, Scotiabank filed a Motion for Summary Judgment on its breach of contract and foreclosure claims against Defendant Ross, as well as on Defendant Ross's Counterclaim. (Dkt. No. 24). Defendant Ross filed a Response (Dkt. No. 31), and Scotiabank filed a Reply. (Dkt. No. 32). In February 2012, Scotiabank filed a supplemental affidavit addressing its damages, in which it submitted an

---

[1] Scotiabank also named Harold Hodge as a Defendant, seeking summary judgment against him on the ground that Scotiabank's lien on the Property had priority over Hodge's lien. The Court granted summary judgment to Scotiabank on this claim. (Dkt. No. 41; Dkt. No. 42 at 9).

affidavit from Bank Officer Hugh Brown dated February 24, 2012 (the "Brown Affidavit") (Dkt. No. 37-1) to update and replace the affidavit from Bank Officer Daniel Rogers dated August 16, 2011 (the "Rogers Affidavit") that accompanied its Motion for Summary Judgment. (Dkt. No. 26-8).

In a Memorandum Opinion dated October 12, 2012 (the "Memorandum Opinion"), the Court found that Scotiabank had provided evidence to support its breach of contract and foreclosure causes of action, and granted its Motion for Summary Judgment on those claims. (Dkt. No. 42 at 12). The Court also found that Scotiabank had demonstrated its entitlement to summary judgment on Defendant Ross' Counterclaim, and that the Bank's lien had priority over that of Defendant Hodge. *Id.* at 9, 15.

The Court further found, however, that Scotiabank's damage calculations were inconsistent and unsupported by record evidence, stating:

> In an affidavit filed in support of Scotiabank's Statement of Undisputed Material Facts, Scotiabank employee Daniel Rogers states that as of August 11, 2011, "Ross is indebted to Scotiabank on the Note in the total amount of $132,011.26. . . comprised of $115,568.30 in principal, $12,673.82 in interest, $2,907.30 in fees and other charges, with interest continuing to accrue thereafter at the rate of [$]28.19 per diem." (Aff. of Daniel Rogers at ¶ 19). However, in an affidavit filed approximately six months later, Scotiabank employee Hugh Brown states that as of February 22, 2012, "Ross is indebted to Scotiabank on the Note in the total amount of $190,812.06 . . . comprised of $115,568.30 in principal, $21,133 in interest, *$45,886.58 in add-on charges, $7,373.07 in add-on interest*; $861.84 in fees, with interest continuing to accrue thereafter at the rate of $41.81 per diem." (Aff. of Hugh Brown at ¶ 19, Dkt. No. 37-1) (emphasis added). Notably, the total amount sought by Scotiabank increased by $58,801.34 from August 2011, to February 2012—an increase of approximately 45%. Mr. Brown does not explain what the $45,886.58 in "add-on charges" and the $7,373.07 in "add-on interest" are; why the Bank is entitled to those "add-on charges"; and why the *per diem* interest rate is different from the prior *per diem* rate. Scotiabank's damage calculations are seemingly inconsistent and unsupported by record evidence. Thus, Scotiabank has failed to adequately demonstrate the amount of its damages.

(Dkt. No. 42 at 12-13).

3

The Court denied, without prejudice, the Bank's Motion for Summary Judgment on the issue of damages and ordered Scotiabank to file submissions addressing its amount of damages

> with particular attention to the damages issues discussed in this Memorandum Opinion. Specifically, Scotiabank shall have up to and including October 26, 2012, to file with the Court a submission detailing, with particularity, the specific damages sought, the manner in which such damages are calculated, and the legal and factual grounds for those damages. The submission must also indicate the amounts paid by Defendant Ross on the Promissory Note and Mortgage and the date of her default, and should include supporting evidence.

*Id.* at 16.

Scotiabank filed a "Notice of Clarification" (the "Notice") in which it responded to the Court's Order regarding further briefing on damages. (Dkt. No. 44). Relying upon the damages figures in the Brown Affidavit, Scotiabank clarified that "add-on charges" include "legal fees, force placed insurance, valuation of property and additional expenses that may occur during the foreclosure process," and are allowed pursuant to paragraphs 19-21 of the Mortgage and paragraph 2 of the Note (attached to the Notice as Exhibits A and B). (Dkt. Nos. 44 ¶ 3, 44-1, 44-2). The Bank further noted that add-on interest is "interest that Scotiabank applies to its add-on charges." (Dkt. No. 44, ¶ 4).

As documentary support for its add-on charges, Scotiabank attached a Memorandum of Costs from its attorneys (which included an Affidavit indicating the hourly rates charged and a fifteen-page accounting of legal fees totaling $29,180.00, plus $1,509.48 in costs) (Dkt. No. 44-3), and a seven-page loan history of the account. (Dkt. No. 44-4).

The Notice also explained that the variance between the per diem interest rate reflected in the Rogers Affidavit ($28.19) and the Brown Affidavit ($41.48) was caused by "the increase in the overall loan payoff," which was "due to an increase in principal interest, add-on charges,

add-on interest and fees, resulting from the continuing failure of Defendant Ross to comply with her obligations under [ ] the terms of the Note and Mortgage." (Dkt. No. 44, ¶ 6).

Defendant Ross did not file a response to the Notice.

On February 12, 2014, Scotiabank filed a "Motion for Ruling on Damages; or, in the Alternative, for a Hearing on Damages," observing that the case was ripe for a decision on damages which, once rendered, would enable it to proceed with execution and sale of the Property. (Dkt. No. 46). A notation on the docket indicates that, approximately three weeks later, Defendant Ross "came to Chambers and indicated that she ha[d] not received any orders from the clerk's office," and that the Deputy Clerk gave her, *inter alia*, a copy of the October 2012 Memorandum Opinion and Order. (Docket Notation, 3/5/14). The next day—March 6, 2014—Ross filed a Motion to Stay a ruling on the Motion for Ruling on Damages. (Dkt. No. 47).

In an Order dated May 2, 2014, the Court granted in part and denied in part Defendant Ross's Motion to Stay. (Dkt. No. 48). The Court denied her motion to the extent that she sought a review of the Memorandum Opinion adjudicating the Motion for Summary Judgment, finding that Defendant Ross had the opportunity to file—and did in fact file—an Opposition to the Motion. *Id.* The Court further noted that, although the Clerk's Office should have mailed Defendant Ross a copy of the October 2012 Memorandum Opinion which established the briefing schedule for the damages issue, she subsequently received copies of the pertinent documents. The Court granted her additional time to address the Bank's Motion for Ruling on Damages, finding that this opportunity to respond would "cure any prejudice she may have suffered." *Id.* at 3.

On May 23, 2014, Ross filed a "Response to Plaintiff Bank of Nova Scotia's 'Notice of Clarification' and 'Motion for Ruling on Damages' and Request for Reconsideration of Order

5

Granting Summary Judgment" ("Response"). (Dkt. No. 50). In her Response, she claimed that she was unaware that summary judgment had been granted in part and denied in part; that she was not granted an opportunity to defend her position against the Bank; and that even though she received copies of the Memorandum Opinion, she had suffered prejudice in this case. As a result, she sought reconsideration of the Court's decision on summary judgment. *Id.* at 4-5.

With regard to damages, Defendant Ross asserted that the Bank had not presented "a scintilla of evidence" to support its requested damages of $190,812.06, as it did not present an itemization or breakdown of what constituted the $21,133.00 in interest, the $7,373.07 in add-on interest, the $861.84 in unspecified fees, and the add-on charges of $45,886.58 (with the exception of the $30,689.48 in attorney's fees). *Id.* at 6-7. She argued that the Bank had not offered any credible explanation for the different per diem rates referenced in its documents, *id.* at 6,[2] and that the attorney's fees were "unreasonable and are in excess of the customary rates charged" by this attorney. *Id.* at 7.

Defendant Ross argued the merits of her cross-claim against Defendant Harold Hodge, *id.* at 8-9, and re-argued that part of her counterclaim against the Bank that it failed to comply with fair lending regulations. In the latter regard, she observed that the Bank's new mortgage servicer had forwarded contradictory loan statements to her dated March 19, 2014, stating that the amount due on her loan was $47,847.91 (consisting of principal, interest, regular monthly payment, fees charged and overdue payment), and April 18, 2014, stating that the amount due was $80,325.15. *Id.* at 8. She provided copies of those loan statements. (Dkt. Nos. 50-8, 50-9).

---

[2] Defendant Ross cited the $34.43 per diem interest rate indicated in Plaintiff's Complaint (Dkt. No. 1, ¶ 9); the $28.19 per diem interest rate in the Rogers Affidavit (Dkt. No. 26-8, ¶ 19); and the $41.48 per diem interest rate in the Brown Affidavit. (Dkt. No. 37-1, ¶ 19).

Finally, Ross asserted that after Scotiabank Officer Daniel Rogers submitted an affidavit of amounts due in support of the Bank's Motion for Summary Judgment, he pled guilty to fraudulently adding charges to Scotiabank customers' loan and mortgage accounts and converting those payments to his own use. (Dkt. No. 50 at 1, 2). Based on this information, Ross concluded that the Rogers Affidavit was fraudulent. *Id.* Ross attached as exhibits the judgment in Rogers's criminal case and a newspaper article concerning his guilty plea. (Dkt. Nos. 50-1, 50-2).

In its two-page, unsworn Reply dated June 9, 2014, Scotiabank contended that "the latest figures" it had provided to Ross and the Court—contained in Brown's February 24, 2012 Affidavit—"are the correct figures based on Ross's continued non-payment." (Dkt. No. 51). In a footnote, Scotiabank asserted that its "newly retained third-party loan administrators . . . sent loan default notices to Ross which do not account for these ongoing foreclosure proceedings, of which [it] was unaware. Notwithstanding, the verified figures provided to the Court by Scotiabank's loan manager are accurate." *Id.* n.1. Scotiabank further claimed that Defendant Ross's Opposition, replete with "unverified assertions," contained no evidentiary support that the Bank's statement of damages was incorrect. Moreover, because she failed to file an opposing Affidavit, "all factual assertions in Scotiabank's supporting Affidavit must be deemed to have been admitted by defendant" and summary judgment on damages must be granted in its favor. *Id.* at 2.

## II. DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that

7

the moving party is entitled to judgment as a matter of law." *Klein v. Weidner,* 729 F.3d 280, 283 (3d Cir. 2013) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Hart v. Electronic Arts, Inc.,* 717 F.3d 141, 148 (3d Cir. 2013) (internal quotation marks omitted). The non-moving party "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or [] vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). To demonstrate that there is a genuinely disputed issue of fact, a party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or demonstrate that the adverse party failed to cite materials proving that there is no question of fact. Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In reviewing the evidence, the court may not weigh the evidence and must give the nonmoving party the benefit of all reasonable inferences. *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted).

Although *pro se* pleadings and filings must be "construed liberally," the same summary judgment standard applies to *pro se* litigants. *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (noting that in a *pro se* case brought by a prisoner, the plaintiff is expected to produce at least an affidavit at the summary judgment stage) (citing *Brooks v. Kyler*, 204 F.3d 102, 109 (3d Cir. 2000)); *Staples v. Ruyter Bay Land Partners, LLC*, 2007 WL 4800350, at *2 (D.V.I. Dec.

10, 2007) (finding that *pro se* plaintiffs' "bare and conclusory assertions are insufficient to survive a summary judgment motion.").

### B. Damages

The issue before the Court is whether to grant Scotiabank's Motion for Summary Judgment on the issue of damages, as requested in its Motion for Ruling on Damages. In response to the Court's denial, without prejudice, of the Bank's damages claim, with instructions seeking detailed explanations and documentation to support the damages figures set forth in the Brown and Rogers Affidavits, Scotiabank submitted a two-page "Notice of Clarification." (Dkt. No. 44). The Notice reiterated the damages figures set forth in the Brown and Rogers Affidavits—neither of which had been supported by documentary evidence to show how the bank officers arrived at their damages figures—and cited the Mortgage and Note as providing authority for the "add-on charges" of legal fees, force place insurance, property valuation and additional (unspecified) expenses occurring in the foreclosure process. The documentary evidence provided by the Bank to support its damages claims is a Memorandum of Costs supporting its request for attorney's fees and costs, and a seven-page loan history.

The loan history is difficult to read, as it contains screen shots of faint white print on a black background. In addition, it contains numerous abbreviations that are not self-explanatory, and no entries that summarize or explain what the figures on the loan history mean and how they relate to the damages figures that Scotiabank is attempting to prove. (Dkt. No. 44-4). Nor did Scotiabank elucidate how the loan history supports its damages figures. While the loan history may support the $115,568.30 in principal balance, the $21,113.00 in interest, the $7,373.07 in add-on interest, and the $861.84 in fees and other charges that the Bank claims it is owed, it is difficult to determine whether and how the seven pages of loan history transactions provide that

9

proof. The Bank's failure to clearly explain the damages it seeks is especially troubling because the Court explicitly ordered it to detail, "with particularity, the specific damages sought, the manner in which such damages are calculated, and the legal and factual grounds for those damages." (Dkt. No. 42 at 16).

Further, while Scotiabank has provided background information in support of its request for attorney's fees and costs, totaling $30,689.48—a sum included in the $45,886.58 sought for add-on charges—it has not specifically explained what expenses constitute the remaining $15,197.10 in add-on charges. It is not enough to make a general statement that such costs include "force placed insurance, valuation of property and additional expenses that may occur during the foreclosure process," Dkt. No. 44, ¶ 3, and not provide a breakdown of the specific charges associated with each category—especially when the Court ordered Scotiabank to "detail[], with particularity, the specific damages sought." (Dkt. No. 42 at 16).[3]

Moreover, Scotiabank has not explained how it arrived at its per diem interest rate, which has fluctuated substantially in the documents it has submitted. Further, while the Mortgage provides that Scotiabank may charge interest on the add-on charges (Dkt. No. 44-1, ¶¶ 19, 21), the Bank does not explain, for example, how the rate was computed, and if and when the rate may have changed. Lastly, Scotiabank has not provided the date of Defendant Ross's default, which the Court also ordered it to provide. (Dkt. No. 42 at 16).

In view of the foregoing, the Court finds that, except for its claim for attorney's fees and costs, Scotiabank has failed to provide sufficient background and explanatory information to

---

[3] The Federal Rules require that the facts upon which a party relies to support its motion for summary judgment must be supported by evidence of record. Fed. R. Civ. P. 56(c).

permit the Court to assess its claim for damages. Accordingly, except to the extent discussed below, the Court will deny the Bank's Motion for Summary Judgment on damages.

### C. Attorney's Fees and Costs

The Bank submitted a Memorandum of Costs and an affidavit from the Bank's counsel, Matthew J. Duensing, Esq., that identifies who worked on this matter at the Bank's law firm and their billing rates. (Dkt. No. 44-3). Attorney Duensing's rate was $200 per hour; James Bernier, Jr.'s billing rate was $200.00 per hour; Sandra LaPlace's billing rate was "$175/185" per hour; Georgina Nicholas's billing rate was "$125/135" per hour; and Brenda Gibs performed a foreclosure search for a flat fee of $175. *Id.*[4] Attached to the Affidavit is a fifteen-page billing memorandum with columns for the date work was performed, by whom, a brief description of the work performed, the time spent and hourly rate, and the total dollar amount billed, covering professional services from November 12, 2010 through October 30, 2012.

Under the terms of the Mortgage, the Bank may recover "reasonable" attorney's fees. (Mortgage, Dkt. No. 44-1, ¶¶ 20.1, 20.2). The Mortgage also provides that:

> In determining the reasonableness of attorney's fees, the rates charged by Mortgagee's attorneys to Mortgagee shall be presumed to be reasonable except upon a showing that the rates charged the Mortgagee are in excess of the standard and customary hourly rates charged by the said attorneys. It is the express intention of Mortgagor and Mortgagee that indemnification for attorney's fees be governed by contract rather than by statute or judicial discretion.

(Dkt. No. 44-1, ¶ 20.2).

In determining "reasonable" attorney's fees, the Court interprets paragraph 20.2 pursuant to its plain language—allowing a limited challenge to the hourly rates charged by Scotiabank's attorneys. *See Flagstar Bank, FSB v. Rivers,* 2014 WL 1101859, at *4 (D.V.I. Mar. 18, 2014)

---

[4] The Affidavit does not identify the respective positions of the legal professionals in the firm, other than Attorney Duensing.

(noting that plain language of mortgage contract controls). Although Defendant Ross asserts that the hourly rates are in excess of the customary rates charged (Dkt. No. 50 at 7), this bald assertion, without more, is insufficient to create a genuine issue of material fact as to a reasonable hourly rate—especially in view of the contractual language. However, the provision in the Mortgage does not otherwise define what constitutes "reasonable" attorney's fees. The Court will therefore look to the body of Virgin Islands case law interpreting 5 V.I.C. § 541 (governing the award of attorney's fees and costs in the Virgin Islands) for guidance. *See Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).[5]

"To determine a fair and reasonable award of attorneys' fees, the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples,* 2008 WL 413308 at *1 (citing cases). In examining the reasonableness of the fees, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

For example, the Court considers whether the issues in a case are novel and complex, or relatively commonplace. *See Firstbank P.R. v. Connor,* 2009 WL 2515729, at *2 (D.V.I. Aug. 11, 2009); *see also Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973). When a matter "involve[s] run-of-the-mill debt and foreclosure claims,

---

[5] 5 V.I.C. § 541(b) provides: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto[.]" Section 541(a) sets forth the costs that are allowed in a civil action.

and [is] disposed of at the summary judgment stage," the Court, in its discretion, may reduce the award of attorney's fees accordingly. *Firstbank P.R. v. Caribbean Island Adventure, Inc.*, 2008 WL 783537 at *2 (D.V.I. Mar. 20, 2008). The Court may also refuse to reimburse a party for particular billing entries that reflect work "that was billed excessively or repeatedly." *Id.* (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993)).

The Court finds that the total amount of attorney's fees sought in this matter—$29,180.00—is excessive and therefore unreasonable. At bottom, this matter involves "run-of-the-mill debt and foreclosure claims" with issues that "were not novel, but, rather, relatively commonplace." *Caribbean Island Adventure, Inc.*, 2008 WL 783537, at *2. The Court recognizes that Defendant Ross resisted the Bank's efforts to foreclose on the property by interposing counterclaims and opposing the Motion for Summary Judgment (with a two-page Opposition), and the Bank started preparing for trial prior to its cancellation. However, Ross's resistance and the Bank's trial preparation cannot account for the large disparity in attorney's fees between this and other contested summary judgment foreclosure cases in this District.[6]

A significant shortcoming in the Memorandum of Costs submitted by the Bank's counsel is that the amount of time that counsel spent on a discrete task cannot be determined because multiple tasks are often lumped together in one entry. As a result, the Court cannot evaluate precisely the time expended on a particular task—and the attorney's fees requested—for reasonableness. *See Bank of Nova Scotia v. Abdallah*, 2013 WL 1846544, at *6-*7 (D.V.I. May 2, 2013) (by bundling different tasks in one entry, Bank's counsel failed to meet his burden of

---

[6] *See, e.g., Bank of Nova Scotia v. Abdallah,* 2013 WL 1846544, at *8 (D.V.I. May 2, 2013) (awarding $9,045.88 in attorney's fees and costs in contested summary judgment foreclosure matter, after reducing attorney's fees request of $36,319.00 by 75%); *Flagstar Bank, FSB v. Stridiron,* 2013 WL 5941298, at *6-*7 (awarding attorney's fees of $11,300.00 and legal costs of $964.43 in default judgment and contested summary judgment foreclosure case).

showing that attorney's fees sought were reasonable); *see also Charley v. STX Rx, Inc.,* 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) ("If a block entry [containing numerous tasks] is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.") (internal quotation marks omitted).

For example, the December 1, 2010 entry provides: "Review updated title report and property tax status; prepare foreclosure complaint, summons, lis pendens and civil cover sheet" for a total of 1.4 hours. (Dkt. No. 44-3 at 1). Adding together all the bundled entries that refer to preparing the cover sheet, summonses for the two Defendants, and a four-page Complaint that did not raise any novel legal or factual issues, counsel billed approximately 8.2 hours—an amount of time that is excessive for the tasks performed. Similarly, an August 9, 2011 entry provides: "Continue work on preparing for mediation; respond to AMI re same; follow up re outstanding discovery; work on motion for summary judgment and compilation of supporting exhibits," billed at .60 of an hour. (Dkt. No. 44-3 at 8). The bundled entries which include work on the Motion for Summary Judgment from January 2011 to January 2012, total approximately 26.5 hours. This amount of time attributable to the summary judgment motion is also excessive, as the Bank's Memorandum of Law in support of its motion contained five pages of argument on the Bank's foreclosure and breach of contract claims, the priority of its lien over that of Defendant Hodge, and the lack of merit of Ross' counterclaims. (Dkt. No. 25). The four-page Statement of Material Facts essentially repeated the averments made in the Rogers Affidavit. *See* Dkt. Nos. 26, 26-8.

Analysis of the remaining hundred-plus hours billed presents the same challenges because the bundling problem permeates the Bank's entire fee petition. One could conclude that

counsel spent an excessive amount of time on discovery matters (28.3 hours); research on class actions, which the docket shows was never pursued by Defendant Ross (12.1 hours); preparation for mediation (16.5 hours)[7]; and preparation for a scheduled—but subsequently continued—trial (which included 22.0 hours preparing a joint final pretrial order). In sum, given the nature of the issues presented, the tasks performed, and the stage of the proceedings, the Court finds that the 148.7 total hours counsel billed in this case, from receiving the file through filing the Motion for Summary Judgment, are excessive and therefore unreasonable.

Included in the 148.7 total hours are billing entries—after the issuance of the Court's October 12, 2012 Memorandum Opinion denying, without prejudice, the Bank's Motion for Summary Judgment on the issue of damages—which relate to the Bank's second attempt to support its damages claim after failing to do so in the first instance. In the Court's view, it is not reasonable to require Defendant Ross to underwrite the Bank's deficiencies in its initial Motion for Summary Judgment which has resulted in additional legal work—especially when that additional work fails, in large part, to be responsive to the concerns identified by the Court. Accordingly, the Court will disallow $1,278.00 expended in attorney's fees between October 16-30, 2012, as the Bank brought these charges upon itself by failing to support its initial damages claim.

With regard to costs, this Court has held that in order for costs to be reimbursed, they must be reasonable under 5 V.I.C. § 541(a). *See Rivers*, 2014 WL 1101859, at *4. Again, the Court will seek guidance from cases interpreting that statute in assessing the reasonableness of

---

[7] The Court is cognizant of the fact that when it added up time billed for work on the motion for summary judgment and time billed in preparation for mediation, in an effort to determine how much time was spent on each task—as reflected in this example—it counted the same .60 of an hour twice. This, however, is a consequence of counsel's failure to separate the time spent on discrete tasks, not an error by the Court in double-counting.

costs. Under those cases, it is well-established that "photocopying and other reproduction costs are nonreimbursable." *Lempert v. Singer*, 1993 WL 661181, at *2 (D.V.I. 1993) (citing *Bedford v. Pueblo Supermarkets of St. Thomas, Inc.*, 18 V.I. 275, 278 (Terr. Ct. 1981) (office expenses, such as photocopying and telephone calls are not reimbursable)); *Good Timez Inc. v. Phoenix Fire & Marine Ins. Co.,* 754 F. Supp. 459, 464 (D.V.I. 1991) (charges for photocopying and telephone calls have been "repeatedly held as not reimbursable under section 541").

The Court finds that the photocopying, mail, and telephone costs sought in counsel's Memorandum of Costs are not compensable, and will not be approved. Costs related to filing and recording fees, service of process, travel expenses, and computerized legal research will be allowed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be reimbursable).

In view of the foregoing, the Court concludes that the Bank has not shown that the $29,180.00 in attorney's fees and $1,509.48 in costs that it claims are reasonable and reimbursable. Accordingly, the Court will reduce the attorney's fees award in two steps. First, based on the discussion above, it will subtract from the $29,180.00 sought in attorney's fees the $1,278.00 in fees billed from October 16-30, 2012 for work on the Notice of Clarification, leaving $27,902.00. Second, it will reduce that sum by 60%, from $27,902.00 to $11,160.80 based on the bundled entries that prevent the Court from conducting a more precise analysis of fees incurred and the seemingly excessive time billed.[8] Further, based on the exclusions

---

[8] With a sixty percent reduction, the attorney's fees in this case are generally at par, if not slightly higher, than fees awarded in other contested summary judgment foreclosure cases in this District. *See* n.6, *supra.*

16

discussed above, the Court will reduce the costs sought from $1,509.48 to $1,265.99.[9] Accordingly, attorney's fees and costs will be awarded in the total amount of $12,426.79. *See Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205, 1208 (3d Cir. 1969) (allowing 7.5%, or $2,000, of the $27,000 in requested attorney's fees in mortgage foreclosure case); *Caribbean Island Adventure*, 2008 WL 783537, at *2 (allowing 6%, or $1,034.26 of $16,861.16 in requested attorney's fees and costs in debt and foreclosure case); *Staples,* 2008 WL 413308, at *2 (allowing 21%, or $2,000, of the $9,511 in requested attorney's fees and costs).

Accordingly, the Court will grant in part Scotiabank's Motion for Summary Judgment on damages to the extent that it will award attorney's fees and costs incurred through March 30, 2012 in the amount of $12,426.79. The Court will deny in part the Motion for Summary Judgment to the extent that Scotiabank seeks other damages.

### D. Defendant Ross's Request for Reconsideration

In her Response to Scotiabank's "Notice of Clarification" and "Motion for Ruling on Damages," Defendant Ross seeks reconsideration of the Court's October 2012 Memorandum Opinion and Order granting Scotiatbank's Motion for Summary Judgment on its foreclosure and breach of contract claims. (Dkt. No. 50). Notwithstanding that Defendant Ross had the opportunity and in fact submitted an Opposition to the Bank's Motion for Summary Judgment—which was considered by the Court—she asserts that she was "blindsided by the actions of the Court in it[]s granting of Summary Judgment," and that allowing her to respond to the Motion for Ruling on Damages did not cure the prejudice she suffered because she was "egregiously impacted" by that decision. *Id.* at 4, 5.

---

[9] Excluded costs include charges for photocopies, long distance telephone calls, and postage.

A motion for reconsideration must be based on at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not [previously] available. . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Such motions "are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Greene v. V.I. Water & Power Auth.*, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting *Bostic v. AT & T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004)); *see also* LRCi 7.3. Reconsideration "is an extraordinary remedy and should be granted sparingly." *Boldrini v. Wilson*, 2013 WL 619774, at *1 (M.D. Pa. Feb. 19, 2013) (citing *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)).

Defendant Ross does not explain how the Court's Memorandum Opinion is incorrect, nor does she allege that there was an intervening change in controlling law or that new evidence is now available that was not previously available when the Court rendered its opinion. She apparently relies on the third reconsideration factor—manifest injustice—in arguing that she was prejudiced by not being aware of the Court's decision. For a court to grant reconsideration on the ground of manifest injustice, the movant has to show that "the Court overlooked some dispositive factual or legal matter that was presented to it,'" *Greene*, 2012 WL 4755061, at *2 (quoting *In re Rose,* 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007)), that "might reasonably have resulted in a different conclusion." *Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 442 (D.N.J. 1998).

Ross does not make such an allegation. Her argument that she was "egregiously affected" by the decision does not implicate any faulty reasoning by the Court, but pertains to the admittedly negative consequences of losing her challenge to the Bank's foreclosure and breach of contract claims. In this regard, she does not explain how lack of knowledge of the decision—especially in view of her opportunity to respond to the Bank's Motion—"egregiously affected" her.

In sum, Defendant Ross is attempting to simply register her disagreement with the Court's decision, which is not grounds for granting reconsideration. *See Boretsky v. Governor of N.J.,* 433 F. App'x 73, 78 (3d Cir. 2011) (observing that party's argument that merely expressed disagreement with the District Court's decision "was insufficient to warrant reconsideration"). There is, and was, no manifest injustice here. Accordingly, Defendant Ross has offered no legitimate grounds for reconsideration of the Court's October 12, 2012 Memorandum Opinion.

### III. CONCLUSION

For the reasons set forth above, the Court grants Scotiabank's Motion for Ruling on Damages. The Court grants in part and denies in part Scotiabank's Motion for Summary Judgment on the issue of damages. The Court will award $12,426.79 in attorney's fees and costs.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 26, 2014 _____/s/_____
WILMA A. LEWIS
Chief Judge