DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| THE BANK OF NOVA SCOTIA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 2010-0118 |
| DIANE D. ROSS a/k/a DIANE J. ROSS ) | |
| a/k/a DIANE ROSS and HAROLD HODGE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Attorneys:**
**Johanna Harrington, Esq.,**
St. Thomas, USVI
 *For the Plaintiff*

**Bruce P. Bennett, Esq.,**
Brookfield, CT
 *For Defendant Diane Ross*

**Martial Webster, Esq.,**
St. Croix, USVI
 *For Defendant Harold Hodge*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

  THIS MATTER comes before the Court on the "Joint Submission Pursuant to February 27, 2015 Order" filed on March 9, 2015 by Plaintiff Bank of Nova Scotia ("Scotiabank" or the "Bank") and Defendant Diane D. Ross a/k/a Diane J. Ross a/k/a Diane Ross ("Ross") (Dkt. No. 69), the "Plaintiff's Response to Joint Submission" filed on March 20, 2015 (Dkt. No. 70), and the supplemental Affidavit of Adonis Morton filed by Scotiabank on May 15, 2015 (Dkt. No. 72). By these filings, the parties addressed the amount of damages Ross owes Scotiabank in this debt and foreclosure action. For the reasons that follow, the Court finds that Ross owes Scotiabank $193,219.99 in damages and will issue the Judgment and Order accordingly.

## I. PROCEDURAL HISTORY

The procedural history in this case is set forth in detail in the Court's September 26, 2014 Memorandum Opinion granting in part and denying in part Scotiabank's Motion for Summary Judgment on the issue of damages. (Dkt. No. 56). The Court will repeat here only those facts necessary to place the current Opinion in context.

On December 10, 2010, Scotiabank filed a Complaint against Defendant Diane Ross alleging breach of contract and foreclosure causes of action. (Dkt. No. 1).[1] The Complaint alleged that, on October 27, 2000, Defendant Ross executed a Promissory Note in the amount of $126,400.00, at an interest rate of 9.25% *per annum*, with the indebtedness secured by a Mortgage executed the same day, regarding property (the "Property") described in the Quitclaim Deed as:

> Plot No. 110 (comprising 0.65 U.S. acres, more or less), Estate Work and Rest, Queen Quarter, St. Croix, U.S. Virgin Islands, as more particularly shown on Public Works Department Drawing No. 988, dated December 6, 1960.

(Dkt. No. 1, ¶¶ 5, 7; Dkt. No. 26-1). The Complaint further alleged that Defendant Ross defaulted on the Promissory Note and Mortgage, and the Bank sought a judgment of debt and foreclosure, interest, costs and attorney's fees. (Dkt. No. 1, ¶¶ 8-10).

Defendant Ross, appearing *pro se*, filed an "Answer, Counterclaim, Crossclaim and Class Action" in February 2011 (Dkt. No. 7), and an "Amendment to Answer, Counterclaim, Crossclaim and Class Action" in March 2011. (Dkt. No. 13). In August 2011, Scotiabank filed a Motion for Summary Judgment on its breach of contract and foreclosure claims against

---

[1] Scotiabank also named Harold Hodge as a Defendant, and sought summary judgment against him on the ground that Scotiabank's lien on the Property had priority over Hodge's lien. The Court granted summary judgment to Scotiabank on this claim. (Dkt. No. 41; Dkt. No. 42 at 9). Ross subsequently filed a Crossclaim against Hodge, followed by a Motion for Summary Judgment on the Crossclaim, which remains to be adjudicated. (Dkt. No. 59).

Defendant Ross, as well as on Defendant Ross's Counterclaim. (Dkt. No. 24). Defendant Ross opposed the motion. (Dkt. No. 31).

In a Memorandum Opinion and Order dated October 12, 2012, the Court granted the Bank's Motion for Summary Judgment on the issue of liability for its breach of contract and foreclosure claims. (Dkt. No. 41, Dkt. No. 42 at 12). The Court also found that Scotiabank had demonstrated its entitlement to summary judgment on Defendant Ross' Counterclaim, and that the Bank's lien had priority over that of Defendant Hodge. (Dkt. No. 42 at 9, 15).

The Court further found, however, that Scotiabank's damage calculations were inconsistent and unsupported by record evidence, and denied without prejudice the Bank's Motion for Summary Judgment on the issue of damages. The Court ordered Scotiabank to file submissions addressing its amount of damages with more particularity. *Id.* at 16.

Scotiabank filed a "Notice of Clarification" in which it responded to the Court's Order regarding further briefing on damages. (Dkt. No. 44). Defendant Ross did not file a response to the Notice.

On February 12, 2014, Scotiabank filed a "Motion for Ruling on Damages; or, in the Alternative, for a Hearing on Damages," observing that the case was ripe for a decision on damages which, once rendered, would enable it to proceed with execution and sale of the Property. (Dkt. No. 46). A notation on the Court's docket indicated that, approximately three weeks later, Defendant Ross "came to Chambers and indicated that she ha[d] not received any orders from the clerk's office," and that the Deputy Clerk gave her, *inter alia*, a copy of the October 2012 Memorandum Opinion and Order. (Docket Notation, 3/5/14). The next day—March 6, 2014—Ross filed a Motion to Stay Scotiabank's Motion for Ruling on Damages. (Dkt. No. 47). In an Order dated May 2, 2014, the Court granted in part and denied in part Defendant

Ross's Motion to Stay, granting her, *inter alia*, additional time to address the Bank's Motion for Ruling on Damages. (Dkt. No. 48).

On May 23, 2014, Ross filed a "Response to Plaintiff Bank of Nova Scotia's 'Notice of Clarification' and 'Motion for Ruling on Damages' and Request for Reconsideration of Order Granting Summary Judgment." (Dkt. No. 50). With regard to damages, Ross asserted that the Bank had not supported its request for $190,812.06 in damages, as it did not present an itemization or breakdown of what constituted the interest and add-on interest charges, unspecified fees and other add-on charges (with the exception of attorney's fees). In its Reply, Scotiabank stood by the figures it had previously provided to Ross and the Court. (Dkt. No. 51).

In a Memorandum Opinion dated September 26, 2014, the Court found that Scotiabank had again failed to provide sufficient background and explanatory information to permit the Court to assess its claim for damages and denied the Bank's Motion for Summary Judgment on damages. (Dkt. No. 56). With regard to attorney's fees and costs, the Court awarded $11,160.80 in attorney's fees and $1,265.99 in costs, totaling $12,426.79 through March 30, 2012. *Id.* at 17. Further, the Court denied Defendant Ross' Request for Reconsideration of the Court's earlier Order granting summary judgment in favor of the Bank on the issue of liability for its breach of contract and foreclosure claims and on Ross' Counterclaim. The Court then set an evidentiary hearing on the issue of damages for November 5, 2014. (Dkt. No. 58).

At the hearing on November 5, 2014, the Court engaged in a colloquy with the parties regarding Ross' proposal—agreed to by the Bank—for the Bank to provide Ross with documents detailing the damages it was seeking in this case, after which the parties would confer to determine whether they were in agreement on the amounts sought. (Dkt. No. 63). The Court set a

schedule by which the parties' submissions were to be filed, and indicated that the parties must support their positions with documentation. *Id.*

On March 9, 2015, the parties filed their Joint Submission. (Dkt. No. 69). The Joint Submission was divided into two parts: objections raised by Ross which challenged certain items set forth on Scotiabank's loan history and other documents; and a response to those objections by the Bank. Ross set forth her arguments in twelve numbered paragraphs, and the Bank answered those questions in corresponding numbered paragraphs. As provided by the Court's November 5, 2014 Scheduling Order, the Bank filed a Response to the Joint Submission on March 20, 2015. (Dkt. No. 70). Defendant Ross did not avail herself of the opportunity provided in the Scheduling Order to respond to the Bank's March 20, 2015 submission.

The Court issued an Order on April 24, 2015 directing the Bank to further explain its responses to Defendant Ross' objections set forth in paragraphs 3, 6, and 9 of the Joint Submission. (Dkt. No. 71). The Bank filed an Affidavit of Adonis Morton, Manager of Real Estate Owned Asset Disposal at Scotiabank, on May 15, 2015, in response to the Court Order. (Dkt. No. 72-1).

The Court will address the twelve areas raised by Ross, and the Bank's response, in similarly numbered paragraphs.

## II. DISCUSSION

The Bank submits that Ross owes the following amounts in principal, interest, and other charges under the terms of the Note and Mortgage: $115,568.30 in principal; $48,671.04 in interest through February 2, 2015; $41,071.31 in escrow balance (add-on charges) consisting of

$2,907.30 in moratorium interest,[2] $25,737.22 in force placed insurance, and $12,426.79 in attorney's fees and costs as provided in the September 26, 2014 Memorandum Opinion; late fees of $913.83; valuation (appraisal) fees of $1,575.00; property inspection fees of $97.50; and a total amount due of $207,896.98. (Dkt. No. 69 at 6). Ross' last payment was made on July 21, 2010. (Dkt. No. 70 at 3). The Bank also asserts it is no longer seeking interest on the Add-On charges. *Id.* at 2.

Ross does not object to the principal amount the Bank claims is due—$115,568.30. Nor does Ross object to the $913.83 sought in late fees or $97.50 sought for property inspections. Her objections generally arise in the areas of escrow balance (add-on charges), which includes, *inter alia*, force placed insurance and valuation (appraisals); interest; and other items in the loan history where Ross claims that the charges were not sufficiently explained.

A. The Specific Objections

Item 1:  In her first numbered objection, Ross objects to certain charges for force placed insurance—sums advanced by the Bank to purchase insurance on the Property to protect its security for the Note when Ross had not purchased insurance. Ross objects to a December 12, 2003 charge of $6,698.42, described as "Add-On Other" in the loan history; a June 28, 2004 charge of $3,513.62 described as "A/O Chg Ins"; a November 7, 2005 charge of $3,242.95 described as "A/O Chg Ins"; and a July 5, 2006 charge of $3,211.63 described as "A/O Chg Ins."

---

[2] The Bank explains that moratorium interest is "interest that accumulated when the Bank's customers were given the option to make interest only payments or make no payments. If the 'no payment' option was selected the interest that accumulated for the three-month 'moratorium' period would be added to the total indebtedness. The amount of $2,907.30 equals three months of interest at $969.10 per month. This amount was transferred to SPL/Mortgage History when the Bank converted to computerized record keeping and is identified there as ADI Assessed." (Dkt. No. 70 at 2). The Bank provided a copy of its Diary of Moratorium Interest. (Dkt. No. 70-2). Ross did not object to this figure.

6

(Dkt. No. 69, ¶ 1). She claims that these charges "relate to an agreement between Plaintiff (by and through Bank Manager Derrick Martin) and Defendant that the Bank would procure hazard insurance for the subject property, pay the premium, and Defendant would resolve the premium through regular monthly payments of $250 in addition to the regular monthly mortgage loan payments ($1,039.86)." Ross adds that, "in contravention of that agreement," the Bank added the charges directly to principal, applied interest to the amounts and, rather than apply the $250 monthly payments to retire the insurance premiums "directly as was agreed," applied the payments to loan interest or otherwise split the payment between principal reduction and interest. According to Ross, since the Bank's breach of this agreement "distorts the entire accounting," Ross "cannot agree to the total damages claimed by Plaintiff." *Id.*

In its Response, the Bank asserts that Ross offers no affidavit from Scotiabank Branch Manager Derrick Martin to support her allegations that she had a "special deal" with the Bank concerning how the $250.00 payments would be applied. (Dkt. No. 70 at 1). The Bank also contends that, pursuant to the terms of the Mortgage, it "has complete discretion in how it applies payments to the indebtedness." *Id.*, citing Mortgage, Dkt. No. 26-3, ¶ 8. Scotiabank points out that Ross's payment history reflects that she did not begin making payments of $250 until 2006, even though the Bank purchased force placed insurance on the Property as early as 2002. (Dkt. No. 69 at 7, ¶ 1). The Bank provided handwritten records of its Diary of Force Placed Insurance, which documented the payments the Bank made to purchase insurance on the Property from August 2002 to June 2003. (Dkt. No. 70-1). The Bank explained that these records were handwritten because they were made before the Bank converted to computerized record keeping in 2003. (Dkt. No. 70 at 2). The Bank asserts that it paid a total of $25,737.22 in force placed insurance, and adds this sum to the amount of damages due. *Id.* at 4.

The Court finds that the Bank has properly supported its request for $25,737.22 in damages for force placed insurance. The Mortgage provides that "[a]ny payment" made by Ross "may be appropriated towards the reduction of [Ross's] indebtedness to the [Bank] in such manner as the [Bank] may elect in its complete discretion." (Dkt. No. 26-3, ¶ 8). Ross has provided no evidentiary support for her contention that there was an agreement between her and the Scotiabank Branch Manager concerning how payments would be applied, which would override paragraph 8 of the Mortgage. Document 70-1 sets forth the amount the Bank paid for force placed insurance in 2002 and 2003, prior to electronic records. The Bank has also provided an Excel worksheet that describes and documents the additional charges for force placed insurance in 2004, 2005, 2006, 2008, 2011, 2012 and 2013. (Dkt. No. 70-6). In addition, the Bank has provided documentation for force placed insurance paid in 2014 in exhibits 70-5 and 70-7. The figures documented by the Bank total expenditures of $25,737.22 for force placed insurance. The Court therefore finds that Ross's objection in Item 1 has no merit, and will award the $25,737.22 in damages for force placed insurance that the Bank seeks.

Item 2: This objection also concerns force placed insurance. Ross claims that the account was charged $3,211.63 on July 5, 2006 for force placed insurance, but that she had already secured the necessary insurance, and so informed the Bank. (Dkt. No. 69 ¶ 2). She adds that, on September 8, 2006, the Bank recognized its error and credited the account for $3,298.36 (with no explanation provided for the discrepancy between this amount and the July 5th charge). She claims that rather than crediting the entire amount back to principal (as "the earlier charge was added entirely to principal"), the Bank credited only part of the $3,298.36 to principal and improperly applied the balance to interest. *Id*. The Mortgage History shows that, of the $3,298.36

payment, $1,399.34 was credited to interest and $1,899.02 was credited to principal. (Dkt. No. 70-4 at 2).

In the Joint Submission, the Bank responded: "Plaintiff disagrees with Ms. Ross' characterization and it is investigating her allegations." (Dkt. No. 69 at 7, ¶ 2). In its subsequent Response to the Joint Submission, Scotiabank does not provide the results of its investigation or otherwise address this objection.

Without any response by Scotiabank, the Court finds that the figures and explanations in the Mortgage History may lend credence to Ross' objection. Assuming, then, that Ross' account was erroneously charged for force placed insurance, and that the error was subsequently corrected, the Court concludes that the correction should be recorded in a manner that corresponds with the erroneous charge. This consideration, together with the fact that the correction does not constitute a "payment" by Ross, renders inapplicable the Mortgage provision that vests in the Bank "complete discretion in how it applies payments to the indebtedness." Accordingly, because the Bank did not provide a substantive response to Plaintiff's objection, and cognizant that this is not an exact adjustment to Ross' account, the Court will subtract $1,399.34—the part of the payment that Ross states should have been applied to principal—from the total amount due. This resolution addresses Ross' objection.

Item 3: Ross objects to four entries on March 30, 2005: $945.85; ($945.85); $1,830.06; ($1,828.47)) and four entries on April 12, 2005: $945.85; ($945.85); $1,292.35; ($1,291.41)) which indicate "Add-On Other," "Extsn Pymnt [Extension Payment]," "I-Adj Bk Trn," and "I-Adj Bk Trn." (Dkt. No. 69 ¶ 3). She claims that there is no explanation concerning the nature of the transactions. She also notes that, to the extent the entries are related, some of the amounts differ by a dollar or two which adds to the uncertainty of the Bank's damages figure. *Id.*

9

The Bank's worksheet explains the four charges for each date as follows: Payment Extension added to loan; Payment Extension credited to interest; Interest Adjustment – As a result of the extension; and Interest Adjustment – As a result of the extension. (Dkt. No. 70-6 at 3). Scotiabank states that payment extensions occur when a borrower cannot make the full monthly installment of principal and interest, and they are permitted to make interest-only payments for that month. (Dkt. No. 69 at 7, ¶ 3). The Bank adds that some borrowers, like Ross, are unable to make even the interest-only payment and, as a result, the interest due is adjusted to reflect the additional interest owed. *Id.*

In the Bank's Supplemental Affidavit, Mr. Morton explained that the term "payment extension" refers to a situation where a customer requests that a payment due date be extended; it allows the customer to skip a payment without having to pay late fees if they are able to pay the accrued interest—the bulk of the monthly installment payment. (Dkt. No. 72-1, ¶ 4). However, if a customer cannot pay the accrued interest—which is what occurred here in March and April 2005—the unpaid interest portion of the payment is added to the balance owed, increasing the principal balance by $945.85 on March 30, 2005 and by $945.85 on April 12, 2005. *Id.*, ¶¶ 5-7. The entry marked "Extsn Pymnt" describes the nature of the "Add-On Charge," which explains why the loan balance did not increase with the entry of "Extsn Pymnt." *Id.*, ¶ 10. The abbreviation "I-Adj Bk Tran" means "interest adjustment for back dated transaction." *Id.*, ¶ 11. When the payment due date for Ross was extended, the loan history reflects an entry for the Add-On Charge if the monthly interest was unpaid, an entry describing the Add-On Charge—*i.e.*, an "Extsn Pymnt"—and the interest adjustment for the back dated transaction because, as explained by the Bank, "[t]he payment extension was usually granted after the due date." *Id.*, ¶ 12. The payment extension for April 2005 was granted on April 12, 2005. As the Bank further

10

explained, the March 30, 2005 payment extension was for the payment due on March 1, 2005. When the unpaid interest for the March payment was added to the principal, that interest was capitalized, and the difference ($1.94 for March and $0.94 for April 2005) was added to the accrued interest. *Id.*, ¶¶ 12-14. This explanation satisfies the Court and Ross' challenge is therefore rejected.

Item 4: Ross disputes the transaction dated January 15, 2008 in which the Bank reversed her $1,039.86 payment with the explanation "reason for reversal unknown." (Dkt. No. 69, ¶ 3).

The Bank states that it believes the payment was reversed for insufficient funds. However, since the reason for the payment reversal is "unknown," the Bank has agreed to give Ross a credit of $1,039.86 for this reversed payment, to which Ross has interposed no further objection. *Id.* at 7, ¶ 4.

Item 5: Ross asserts that, on July 8, 2008, Scotiabank reversed a regular monthly payment of $1,039.86 and "rekeyed" the payment as a "$250.00 Add-On payment + $789.86 Payment." She contends that the transaction is unexplained and appears to be the result of erroneous bookkeeping by the Bank. (Dkt. No. 69, ¶ 5).

This objection echoes Ross' objection in Item 1, which the Court previously found has no merit. The Bank applied the $1,039.86 payment towards the reduction of Ross's indebtedness by applying the payment in its "complete discretion." (Dkt. No. 26-3, ¶ 8). The payment history at that time shows numerous $250.00 payments for force placed insurance, and the Bank was at liberty to separate out such payment from the total payment made if it chose to do so.

Item 6: Ross claims that, on October 31, 2008, two entries are shown on the loan history reflecting a transaction totaling $2,727.24. According to Ross, the explanations given—

"Payment Extension credited to interest" and "Payment Extension added to loan"—lack clarity. (Dkt. No. 69, ¶ 6).

In its Supplemental Affidavit, the Bank provided a copy of a letter from Ross dated October 9, 2008 in which she requested a three month moratorium on her payments. (Dkt. No. 72-3). Because Ross was unable to pay the interest due when the Bank agreed to extend the payment due date, the interest for those three months was added to the loan balance. Ross was advised that the cost of payment extensions for those three months was $2,727.24 for the unpaid interest, which was added to her loan balance on October 31, 2008. (Dkt. No. 72-1, ¶¶ 8, 9). The Court is satisfied with the explanation provided by the Bank in its Supplemental Affidavit, and therefore Ross' challenge is rejected.

Item 7: Ross contends that the Bank reversed a $1,039.86 payment on August 6, 2010, with the notation "Reason for reversal unknown," and disputes this transaction. (Dkt. No. 69, ¶ 7).

Here, too, the Bank responds that it believes the payment was reversed due to insufficient funds, but it agrees with Ross that, since the reason for the payment reversal is "unknown," Ross should receive a credit for that reversed payment. Ross has interposed no further objection to the Bank's resolution of this issue.

Item 8: Ross disputes the following transactions, totaling $10,522.93, which were described in the loan history as "Add-On Other": a January 14, 2011 item in the amount of $1,069.79; a May 9, 2011 item in the amount of $1,178.00; a June 10, 2011 item in the amount of $2,168.64; an October 11, 2011 item in the amount of $4,267.50; and a December 21, 2012 item in the amount of $1,839.00. (Dkt. No. 69, ¶ 8). Ross notes that the Bank's explanation for these charges is "Unknown."

The Bank believes these "Add-On" charges were for legal fees that were not coded properly in its system. The Bank notes that since its response is only an "educated guess," it has agreed to give Ross a credit of $10,522.93 for these "Add-On Other" charges. (Dkt. No. 69 at 8-9, ¶ 8). Ross has interposed no further objection to the Bank's resolution of this issue.

Item 9: Ross objects to the following "Add-On Other" charges to her account, which are explained as "Valuations": $550.00 on January 5, 2011; $350.00 on June 20, 2011; $325.00 on December 22, 2011; and $350.00 on November 21, 2012. (Dkt. No. 69, ¶ 9). She contends that she was never provided any notice of the charges or what a valuation might constitute. Ross adds that if the charges relate to appraisals of the Property, they are unauthorized and unreasonable. *Id.*

The Bank responds that valuations are appraisals and that, pursuant to paragraph 10 of the Mortgage, it is entitled to have Ross pay for one appraisal per year. The Bank has agreed to give Ross a credit of $675.00 for the cost of additional appraisals conducted during 2011. (Dkt. No. 69, ¶ 9).

In its Supplemental Affidavit, the Bank adds that, in determining which of the three appraisals in 2011 to charge Ross, the first appraisal of $550.00, dated January 5, 2011, was used. (Dkt. No. 72-1, ¶ 15). The Bank notes that it charges the customer the exact amount charged by the appraiser. *Id.,* ¶ 16.

The Court is satisfied by this explanation, which credits Ross' account $675.00 for the extra appraisals in 2011. This appropriately addresses Ross' objection.

Item 10: Ross observes that the loan summary produced by the Bank includes "extensive amounts for 'legal fees' and 'Mediation,'" even though the Bank has represented that it accepts the Court's decision in its September 26, 2014 Memorandum Opinion regarding the amount of

13

legal fees to which it may be entitled. (Dkt. No. 69, ¶ 10). Consequently, Ross disputes any award of legal fees included in the loan summary.

The Bank states that "[a]ll attorneys' fees and costs, including the mediation fee of $406.25, have been removed from the amount [it] is seeking other than the award of attorneys' fees and costs granted by the Court's Order." (Dkt. No. 69 at 8, ¶ 10). Ross has interposed no further objection to the Bank's resolution of this issue.

Item 11: Ross points out that, on February 28, 2014, the accounting memorializes payments of $154,352.57, $79,646.19, $861.84, and $2,907.30 by the Bank to an entity identified as "Cenlar" with the explanation "Transfer to Cenlar." (Dkt. No. 69, ¶ 11). Ross argues that, to the extent Cenlar holds an interest in the damages claimed by the Bank, it must be made a party to this action.

The Bank replies that it did not sell or assign its Notes and Mortgages to Cenlar; that it continues to own its Notes and Mortgages, including Ms. Ross's Note and First Priority Mortgage; and that Cenlar has a contract with Plaintiff to process payments. Consequently, the payments cited by Ross reflect only that Cenlar is processing payments for the Bank. (Dkt. No. 69 at 8, ¶ 11).

The Court finds that this is a sufficient explanation for the items questioned by Ross. Ross' challenge is therefore rejected.

Item 12: Ross's final objection concerns her receipt of an IRS Form 1098 for 2014. The Form 1098 identifies her as "Payor/Borrower"; reflects that the Bank claims to have received $56,833.66 in mortgage interest from her in 2014; and also reflects a remaining balance of $215,952.37—when the Bank has represented otherwise to her. Ross considers receipt of this

form as further evidence that the Bank's accounting is "subject to great error." (Dkt. No. 69, ¶ 12).

The Bank acknowledges that Ross was sent this form in error, and that the error is being corrected with the Virgin Islands Bureau of Internal Revenue and the Internal Revenue Service. (Dkt. No. 70 at 3). The Court accepts the Bank's acknowledgment of error.

### B. Summary

The Bank has agreed to reduce the amount of damages by $13,277.65 in response to the various objections set forth by Ross in the Joint Submission. With that reduction, the Bank asserts that the total amount of damages due is $194,619.87. (Dkt. No. 70 at 4). The Court will take a further reduction of $1,399.34, as discussed in Item 2, resulting in total damages due of $193,219.99.

### III. CONCLUSION

For the reasons discussed above, the Court finds the amount of damages due Scotiabank from Defendant Diane D. Ross a/k/a Diane J. Ross a/k/a Diane Ross on its breach of contract and foreclosure causes of action is $193,219.99, which includes the award of attorney's fees set forth in the Court's September 26, 2014 Memorandum Opinion and Order. (Dkt. Nos. 55, 56).

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: June 15, 2015 _____/s/_____
WILMA A. LEWIS
Chief Judge